Filed 4/27/26  P. v. Montiel CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>EDWIN ROBERT HERNANDEZ, MONTIEL, JR.,<br><br>    Defendant and Appellant. | G064563<br><br>(Super. Ct. No. 20HF0590)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Larry Yellin, Judge. Reversed and remanded with directions.

Aaron J. Schechter, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Eric A. Swenson, Sahar Karimi and Marvin E. Mizell, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant Edwin Robert Hernandez Montiel, Jr., challenges the trial court's summary denial of his motion for relief pursuant to the California Racial Justice Act of 2020. We agree he made a prima facie showing of an RJA violation. We conditionally reverse and remand for an evidentiary hearing. If the court finds no RJA violation, we further direct it to consider challenges to a restitution fine and fees.

FACTS

Montiel, who is Hispanic, was charged with sexually abusing his minor stepdaughter.

Montiel filed a motion alleging a violation of the RJA. (Pen. Code, § 745, subd. (b).)[1] He attached a transcript of a recording of Deputy Allemand, who was "the first person to take a statement from" the stepdaughter. While still at Montiel's house, Allemand had told another deputy: "I don't know what it is about . . . I don't know what it . . . I don't know what it is about . . . culturally, but that's a pretty common connect right there between step-dad / step-daughter, grandpa . . . ." When the colleague asked, "Step dad?" Allemand responded: "Right. It's her step-dad. Yeah. But, grandpa / granddaughter, uncle . . . its [*sic*] pretty common in that culture. Sadly."

The prosecutor filed an opposition, providing more background and a longer transcript excerpt.[2] The prosecutor explained that after

---

[1] All undesignated statutory references are to this code.

[2] Montiel does not dispute the facts set forth in the prosecutor's declaration. His trial counsel told the court that the parties "agree on what the objective facts are." On appeal, he states the "only documentation of Allemand's role in the case is contained in [Montiel]'s RJA motion . . . and the prosecution's opposition."

Allemand spoke with the stepdaughter, he "turned the investigation over to . . . investigators that arrived on scene." The deputy's "role after the disclosure was to serve as back up and secure the scene" and he "did not partake in any additional interviews . . . ." The prosecution's transcript included the same exchange quoted by Montiel. It also included an ensuing discussion, during which Allemand mentioned a fire fighter arrested for child pornography and the other deputy mentioned a former coach of his who had been arrested for child molestation. Allemand responded: "It is scary, how common and prevalent that is, between . . . leaders, coaches . . . you know what I mean?"

The trial court denied the motion without holding an evidentiary hearing. (See § 745, subd. (c).) It found the deputy was only "peripherally involved" and added: "I just don't find the bias." The court described Allemand's comments as constituting "just a general statement" and explained the court "didn't read it like" Allemand was saying a "person is or is more likely to be a child molester because" of their "color or race."[3] The court found Allemand and his coworkers were simply "chatting about child molesters."

Montiel was convicted of 12 counts of sexual abuse and sentenced to a prison term of 405 years to life. The court imposed a minimum restitution fine of $300 (§ 1202.4, subd. (b)(1)), court operations assessment

---

[3] The court asked defense counsel whether he believed the RJA required that "any time an officer makes a statement that may have some race or culturally related context -- that that client is entitled to some relief?" The trial court later noted it would "be nice to have some law on it and" for this court to "give us some direction."

fees totaling $480 (§ 1465.8), and criminal conviction assessment fees totaling $360 (Gov. Code, § 70373, subd. (a)(1)).

DISCUSSION

I.

AN EVIDENTIARY HEARING IS WARRANTED

The RJA provides: "The state shall not seek or obtain a criminal conviction . . . on the basis of race, ethnicity, or national origin." (§ 745, subd. (a).) One way to show an RJA violation is by proving "a law enforcement officer involved in the case . . . exhibited bias or animus towards the defendant because of the defendant's race, ethnicity, or national origin." (*Id.*, subd. (a)(1).) If the defendant makes a prima facie showing of a violation, the trial court must hold an evidentiary hearing. (*Id.*, subd. (c).)

We agree with the parties that Allemand was "involved in the case." (§ 745, subd. (a)(1).) The Attorney General concedes: "Interviewing the victim about the sexual abuse she has suffered, even if brief, as Deputy [Allemand] did here, qualifies as actively participating or having a material part in the criminal investigation. Thus, the trial court erred when it found that Deputy [Allemand] was not a law enforcement officer involved in the case." The statute does not require the officer to be integral to the investigation, just somehow "involved." Interviewing the victim seems to us to constitute involvement.

We further agree with Montiel that he made a prima facie showing of an RJA violation. (§ 745, subd. (c).) A "'prima facie showing' means that the defendant produces facts that, if true, establish that there is a substantial likelihood that a violation of subdivision (a) occurred. . . . [A] 'substantial likelihood' requires more than a mere possibility, but less than a standard of more likely than not." (*Id.*, subd. (h)(2).)

4

Here, there is no dispute Allemand expressed his belief that these kinds of sexual offenses are "culturally" "pretty common in that culture." These words create at least "more than a mere possibility" (§ 745, subd. (h)(2)) that Allemand "exhibited bias or animus towards" Montiel because of his "race, ethnicity, or national origin" (*id.*, subd. (a)(1)).

The trial court acted too soon by concluding Allemand was just "chatting about child molesters" and not directing his statements against Montiel's Hispanic heritage. (*Finley v. Superior Court* (2023) 95 Cal.App.5th 12, 23.) The Attorney General actually underscores the premature factfinding by asserting "the court properly construed the comments as referring to the culture or 'world' of child molesters and sex offenders." The proper construction of Allemand's comments needed to be resolved at an evidentiary hearing. That is where the court can determine, as the trial court here aptly phrased it, whether a "statement that may have some race or culturally related context" actually showed bias or animus.

A conditional reversal is warranted for the court to hold an evidentiary hearing. (See *People v. Howard* (2024) 104 Cal.App.5th 625, 656.) "We express no opinion on whether [the] RJA motion should be granted or denied following further proceedings." (*Ibid.*) If the trial court finds there was an RJA violation, the trial court shall determine the appropriate relief. (See § 745, subd. (e)(2), (3).) If the trial court finds the RJA was not violated, the judgment will be reinstated, subject to the ability-to-pay hearing required by the next section.

II.

THE COURT MUST DETERMINE MONTIEL'S ABILITY TO PAY FEES

Montiel contends the trial court wrongly imposed the $300 minimum restitution fine, the $480 in court operations assessment fees, and

the $360 in criminal conviction assessment fees because it did not assess his ability to pay. If the court finds an RJA violation on remand and "vacate[s] the conviction and sentence" (§ 745, subd. (e)(2)), this claim will become moot.

If the trial court finds no RJA violation on remand, it should reconsider the restitution fine. The California Supreme Court recently held that "excessive fines" analysis "is the proper vehicle to challenge punitive fines." (*People v. Kopp* (2025) 19 Cal.5th 1, 23 (*Kopp*); *ibid.* [rejecting "due process requirement to hold an ability to pay hearing before imposing every punitive fine"]). Because, as Montiel asserts in his supplemental briefing, *Kopp* clarified "the constitutional framework for . . . the restitution fine," "[w]e remand to give him the opportunity to assert the legal analyses applicable to such a challenge . . . ." (*Ibid.*)

Also, if the trial court finds no RJA violation on remand, it must hold an ability-to-pay hearing before reinstating the court operations assessment or criminal conviction assessment fees. *Kopp* held these fees are "ancillary costs intended to raise funds for the courts," and that equal protection principles require courts to "consider a defendant's inability to pay before imposing" them. (*Kopp, supra,* 19 Cal.5th at pp. 28, 30.)[4]

---

[4] Because both authorizing statutes provide for fees to be imposed "on every conviction" (§ 1465.8, subd. (a)(1); Gov. Code, § 70373, subd. (a)(1)), we reject Montiel's contention that "single" fees of $40 and $30, respectively, should have been imposed.

## DISPOSITION

The judgment is conditionally reversed and the matter is remanded for an evidentiary hearing on the alleged RJA violation.

If the court finds an RJA violation, the trial court must determine the appropriate relief. If the court vacates the conviction and sentence, Montiel's ability-to-pay challenges are moot.

If the court finds no RJA violation, then the judgment is reinstated except: (1) the court must allow Montiel to challenge the restitution fine and (2) the court must determine Montiel's ability to pay the court operations assessment and criminal conviction assessment fees.


SCOTT, J.

WE CONCUR:


MOORE, ACTING P. J.


BANCROFT, J.*

*Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

7